UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC C. ONG, | |
| Plaintiff | CIVIL ACTION NO. 3:24-CV-808 |
| v. | (MEHALCHICK, J.) |
| ALLSTAR THERAPIES, INC., et al, | |
| Defendants | |

**MEMORANDUM**

Presently before the Court is a motion to dismiss filed by Defendant Allstar Therapies, Inc. ("Allstar") on July 22, 2024. (Doc. 11). This is civil action was initiated upon the filing of the complaint by Plaintiff Eric C. Ong ("Ong") on May 15, 2024 against Allstar and Pleasant Valley Manor, Inc. ("Pleasant Valley") (collectively with Allstar, "Defendants"). (Doc. 1). In his complaint, Ong asserts claims pursuant to Title VII, the Pennsylvania Whistleblower Act ("PWA"), Older Adults Protective Services Act ("OAPSA"), and common law wrongful termination. (Doc. 1). For the reasons set forth herein, Allstar's motion to dismiss will be **DENIED in part** and **GRANTED in part**. (Doc. 11).

I.  **BACKGROUND AND PROCEDURAL HISTORY**

The following factual background is taken from Ong's complaint. (Doc. 1). Allstar is a provider of physical, occupational, speech, and nutrition therapy in outpatient, skilled nursing, home health, assisted living, and correctional settings. (Doc. 1, ¶ 8). Pleasant Valley is a provider of long-term and short-term care, skilled medical care, and rehabilitation services. (Doc. 1, ¶ 9). Ong was hired as a physical therapist by Allstar on April 1, 2020 and placed to work within Pleasant Valley. (Doc. 1, ¶ 10). Allstar and Pleasant Valley were joint employers for Ong, with each having the ability to manage, discipline, and direct Ong. (Doc.

1, ¶¶ 10, 13). Allstar employees, Dr. Wendy Echeverria ("Echeverria"), Beth Houpt ("Houpt"), and Tim Kubistek ("Kubistek") supervised Ong. (Doc. 1, ¶ 14). In addition to allegations of sexual harassment, which Defendants do not move to dismiss at this time, Ong alleges that Allstar and Pleasant Valley pressured Ong "and other physical therapists to sign off that unstable predominantly elderly (over the age of 60) patients/residents were released to walk down hallways with just nursing assistants or aides, when they had not been properly cleared or deemed safe to do so." (Doc. 1, ¶ 32). As far back as late 2022, Defendants told Ong and other employees to "quickly release" patients "even if they were not ready" in order to improve Defendants' "star rating" from the Centers for Medicare and Medicaid Services. (Doc. 1, ¶¶ 33-34). In response, Ong insisted that he would only release patients when they were strong enough to do so. (Doc. 1, ¶ 35). On or about February 17, 2023, Echeverria again informed Ong that he needed to order patients released to nursing staff and aides to walk in order to improve ratings. (Doc. 1, ¶ 36). Ong again reiterated that he would only do so when it was safe for patients to be released to walk with nursing staff or aides and emphasized a "high risk of falling." (Doc. 1, ¶ 36). Echeverria responded that "the residents have a right to fall." (Doc. 1, ¶ 36). Ong continued to refuse to release patients prematurely, and Echeverria continued to pressure him to do so. (Doc. 1, ¶¶ 37-43). On November 20, 2023, Ong reported the suspected elder abuse to the Pennsylvania Department of Aging and the Pennsylvania Department of Health and stated that Defendants' management was pressuring/requiring him to prematurely release elderly patients to walk with the assistance of nursing staff and aides before they were medically cleared to do so," in order to improve ratings. (Doc. 1, ¶ 46). The next day, on November 21, 2023, Ong was informed that his employment was terminated. (Doc. 1, ¶ 46). Ong alleges that "he was terminated by Defendants in retaliation

for refusing to overlook and/or engage in unlawful, abusive, and/or neglectful activity and for objecting to/complaining of the same." (Doc. 1, ¶ 47). As a consequence of Defendants' actions, Ong has suffered damages. (Doc. 1, at 18).

On July 22, 2024, Allstar filed a motion to dismiss Counts II, III, and IV of Ong's complaint, along with a brief in support. (Doc. 11; Doc. 12). On August 5, 2024, Ong filed a brief in opposition to Allstar's motion. (Doc. 14). On August 15, 2024, Allstar filed a reply brief. (Doc. 15). The motion is thus ripe for disposition.

## II. LEGAL STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

**III.    DISCUSSION**

    A.    COUNT II – PWA CLAIM

        **1.  Whether Ong Properly Alleged Wrongdoing Under the PWA**

Allstar argues that Ong has failed to state a claim under the PWA because he has not properly alleged wrongdoing. (Doc. 12, at 6). Ong responds that he has cited several statutes that Defendants' conduct violated or implicated, thus properly showing wrongdoing. (Doc. 14, at 18).

Under the PWA, "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee [. . .] because the employee [. . .] makes a good faith report [. . .] to the employer or appropriate authority an instance of wrongdoing or waste by a public body." 43 Pa. Stat. Ann. § 1423(a). "Wrongdoing is defined as a 'violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer.'" *Ingram v. Dunbar*, No. 2:22-CV-01594-MJH, 2024 WL 4304558, at *5 (W.D. Pa. Sept. 26, 2024) (quoting 43 Pa. Stat. Ann. § 1422). An employer must violate a law that defines specifically prohibited conduct to constitute "wrongdoing." *Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 556 (Pa. Commw. Ct. 2016) ("The law that the employer violated must specifically define some prohibited conduct or it cannot be violated in a way that constitutes a 'wrongdoing.'"); *Heckman v. UPMC Wellsboro*, No. 4:20-CV-01680, 2021 WL 2826716, at *20 (M.D. Pa. July 7, 2021) ("the term 'wrongdoing' encompasses an 'actual violation of the laws, regulations, ordinance, or code of conduct or ethics which is not of a merely technical or minimal nature.'") (quoting *Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477, 505 (M.D. Pa. 2015) (internal quotations omitted)); *see also Ingram*, 2024 WL 4304558,

5

at *5. Courts in this Circuit have held that in the healthcare context, when an employee complains about patient safety issues and is subsequently fired, that employee is protected as having made a report of "wrongdoing." See Vail v. Dermatology & Mohs Surgery Ctr., P.C., No. CV 24-1535, 2024 WL 4507815, at *3 (E.D. Pa. Oct. 16, 2024) (finding that an employee made a report of wrongdoing under the PWA when she "complained about patient safety concerns").

Ong has alleged that "[t]ere are several laws/regulations that would have rendered unlawful Plaintiff's participation in illegal acts Defendants' management directed him to overlook/perform throughout his employment with Defendants." (Doc. 1, ¶ 44). In his complaint, Ong cite several statutes and laws that require him **not** to release patients to walk prematurely, as Allstar's management directed him to do. (Doc. 1, at 10-11). Specifically, Ong avers that his participation in Allstar personnel's plan to prematurely release patients to walk with only nurse or aide assistance would have been a violation of 49 Pa. Code. § 40.52(3), 49 Pa. Code. § 40.53(c), 63 Pa. Stat. Ann. § 1311(a), and 63 Pa. Stat. Ann. § 1312(a). (Doc. 1, at 10-11). Ong has properly averred that had he released patients to walk hallways without sufficient assistance of a properly trained physical therapist, he would have potentially faced criminal charges and fines under the Physical Therapy Practice Act. (Doc. 1, at 10-11). Ong "reported concerns to Defendants' management" and to the Pennsylvania Department of Aging and the Pennsylvania Department of Health "that [Defendants] were requiring him to release patients/residents to walk with nursing staff and aides, regardless of whether they were medically cleared to do, which could have resulted in patient injury and/or death," which he has properly alleged he reasonably believed was a violation of statutes governing physical therapy ethical requirements such as 49 Pa. Code. § 40.52(3), 49 Pa. Code.

6

§ 40.53(c), 63 Pa. Stat. Ann. § 1311(a), and 63 Pa. Stat. Ann. § 1312(a). (Doc. 1, at 10-11, 14). Thus, by refusing to engage in unlaw acts or violations of ethical codes and for "objecting to/complaining of the same to Defendants' management as well as two separate outside state agencies" and reporting "Defendants' clear wrongdoing to multiple members of Defendants' management," Ong has properly plead "wrongdoing" by Allstar, as defined in the PWA. (Doc. 1, ¶¶ 59-62); *see Vail*, 2024 WL 4507815, at *3 (denying a motion to dismiss a PWA claim based upon an employee's reports of patient safety concerns and subsequent firing); *Carter v. Angels of Care, LLC*, No. CV 24-790, 2024 WL 3444617, at *4 (E.D. Pa. July 16, 2024) ("The PW[A] is designed to ensure 'that employees are not discouraged from reporting violations of legal or ethical codes' to their employers or other authorities.") (quoting *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1202 (Pa. 2001)).

### 2. Whether Defendants Are Employers Under the PWA

Because Ong contends that Allstar's conduct constituted "commit[ing] an instance of 'wrongdoing,' ... [Allstar] must qualify as a 'public body.'" *Eaves-Voyles v. Almost Family, Inc.*, 198 F. Supp. 3d 403, 407 (M.D. Pa. July 27, 2016). "A 'public body' includes government officers, political authorities, and any other body which is created or 'which is funded in any amount by or through Commonwealth or political subdivision authority,'" *Eaves-Voyles*, 198 F. Supp. 3d at 407 (citing 43 P.S. § 1422), or "a member or employee of that body." 43 Pa. Stat. Ann. § 1422 (3). An employer, meanwhile, "means a 'corporation for profit' that 'receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body.'" *Tucci v. Gilead Scis., Inc.*, No. 2:21-CV-1859-NR, 2024 WL 4696008, at *4 (W.D. Pa. Nov. 6, 2024) (quoting *Tucci v. Gilead Scis., Inc.*, No. 2:21-CV-1859-NR, 2023 WL 2139931, at *1 (W.D. Pa. Feb. 21, 2023)

7

(citations omitted)). In the medical services contexts, district courts in this Circuit have previously held that receipt of Medicaid funds subject a healthcare provider to the PWA. *See Heckman*, 2021 WL 2826716, at *19 (denying a motion to dismiss PWA claims and stating "the Court finds that an entity which receives Medicaid reimbursement is a "public body" under the Pennsylvania Whistleblower Law"); *Tucci*, 2024 WL 4696008, at *5 (granting summary judgment to a defendant corporation that received from a public entity "the difference between the negotiated [drug] price and the ceiling [drug] price" because it was not subject to the PWA and stating "there must be some form of ***direct*** payment—*e.g.*, Medicaid reimbursements directly to the 'employer' in exchange for services" in order to subject an entity to the PWA); *Gloukhova v. CSL Behring LLC*, No. CV 22-2223, 2022 WL 16722314, at *6 (E.D. Pa. Nov. 4, 2022) ("It is therefore reasonable to predict that when faced with this question, the Supreme Court of Pennsylvania would find that Medicaid or Medicare funding alone is sufficient to justify liability under the [Whistleblower Law]."); *Harrison v. Health Network Laboratories Limited Partnerships,* 232 A.3d 674, 677 n.3 (Pa. 2020) (finding that an entity, "as a recipient of Medicare and other forms of public assistance payments," is a public body under the PWA) (citations omitted); *Saltzman v. Thomas Jefferson Univ. Hosps., Inc.,* 166 A.3d 465, 475 n.8 (Pa. Super. Ct. 2017) ("an entity that receives Medicaid funding is a 'public body' for purposes of the Whistleblower Law.") (citation omitted).

Here, Ong alleges that "Defendants are 'employer[s]' for purposes of the PWA, as they receive monies through a Medicaid program for services provided by its employees." (Doc. 1, ¶ 58). As discussed *supra*, several district courts in this Circuit, as well as several Pennsylvania courts, have applied the PWA to private healthcare providers, such as Allstar, reasoning that Medicaid funds that a healthcare provider receives from the government makes

8

that entity a "public body" for the purposes of the PWA. *See Heckman,* 2021 WL 2826716, at *19 (collecting cases). Again, Ong alleges that Allstar received public funds through Medicaid. (Doc. 1, ¶ 58). At this stage, these allegations are sufficient to apply the PWA to Allstar. *See Heckman,* 2021 WL 2826716, at *19. Having found that Ong has properly alleged wrongdoing and the application of the PWA to Allstar, Allstar's motion to dismiss Count II is **DENIED**. (Doc. 11).

B. COUNT III – OAPSA CLAIM

Allstar argues that Ong has not stated a claim for retaliation in violation of OAPSA because Ong has not alleged a causal relationship between a protected activity and his termination. (Doc. 12, at 13-14). Ong responds that the averment in the complaint that Ong made a report protected by OAPSA and was fired one day later sufficiently satisfies the pleading requirements for causation at this stage. (Doc. 14, at 24).

Individuals are protected from retaliation based upon their reports of elder abuse by OAPSA. *See* 35 P.S. §§ 10225.101 et seq. Under OAPSA, "individuals are permitted, and in certain instances required, to report to the area agency on aging if they believe an older adult (age sixty or above) is the victim of abuse or in need of protective services. *Painadath v. Lattanzio*, No. CV 22-3604, 2023 WL 9004920, at *2 (E.D. Pa. Dec. 28, 2023) (citing 35 P.S. §§ 10225.101 et seq.). According to the retaliation provision of OAPSA, "[a]ny person making a report" of elder abuse "shall be free from any discriminatory, retaliatory or disciplinary action by an employer or by any other person or entity." 35 Pa. Stat. Ann. § 10225.302. In order to state a claim for relief regarding retaliatory conduct, a plaintiff generally must allege causation. *Hallock v. Green Ridge Pers. Care LLC*, No. 3:16-CV-00595, 2020 WL 13644753 (M.D. Pa. Mar. 31, 2020) (noting that causation is an element of a prima facie case for

retaliation in violation of OASPA). A plaintiff must allege "(1) they engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) a causal connection between the protected activity and the adverse employment action." *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 698 (E.D. Pa. 2016), *clarified on denial of reconsideration*, No. 12-CV-5567, 2016 WL 6135577 (E.D. Pa. Oct. 21, 2016), *aff'd*, 769 F. App'x 57 (3d Cir. 2019), *and aff'd*, 769 F. App'x 57 (3d Cir. 2019) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006)).

Here, Ong has alleged in his complaint that he made a report to the Pennsylvania Department of Aging and the Pennsylvania Department of Health on November 20, 2023, and was terminated just one day later. (Doc. 1, ¶ 70). This temporal proximity supports that there was an unusually suggestive temporal proximity between Ong's termination and his report. *See Mack v. Yost*, 427 F. App'x 70, 73 (3d Cir. 2011) (finding that plaintiff had shown causation by alleging an unusually suggestive temporal proximity between the plaintiff's protected activity and defendant's adverse action); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 792-93 (3d Cir. 2016) (finding that, in complaining to management about unwanted advances from a coworker, plaintiff "alleged facts that could support a reasonable inference of a causal connection between her protected activity in May 2010 and the gradual deterioration of her relationship with her employer until she was laid off in October 2010.").

Allstar asserts that Ong "does not allege that he told [Defendants] that he was making a report to any government agencies," and as such, "Ong cannot establish that [Defendants] terminated him because he made that report if he told no one that he intended to do that." (Doc. 12, at 13). However, the Third Circuit has emphasized that at the motion to dismiss stage, plaintiffs need only show "an inference of retaliation" and can do so by demonstrating

"unusually suggestive" temporal proximity between a protected activity and termination. *Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *4 (3d Cir. Nov. 13, 2023) (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232-33 (3d Cir. 2007) (citations and internal quotation marks omitted)). This causation analysis "is highly fact-based, and depends on the particular context in which the events occurred." *Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 447 (E.D. Pa. 2014), *aff'd sub nom. Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015). It is typically reserved for after discovery. Indeed, Ong does not claim to identify "[w]ho specifically from Defendant Allstar were aware of Mr. Ong's complaint to the Department of Aging and who made decisions regarding his employment." The Court finds that such information will likely be a part of a heavily fact-based inquiry, and his allegations thus far, primarily that he was terminated one day after filing his report, have "raise[d] a reasonable expectation that discovery will reveal evidence" of causation. (Doc. 14, at 25); *see Mercer*, 26 F. Supp. 3d at 447. As such, Allstar's motion to dismiss Count III is **DENIED**. (Doc. 11).

C. COUNT IV – COMMON LAW CLAIM

Allstar submits that Ong's common law wrongful termination claim in Count IV because the PWA bars a common law claim for wrongful termination. (Doc. 12, at 5). Ong responds that that his common law wrongful termination claim is not repetitive of his PWA claim. (Doc. 14, at 12-16).

Pennsylvania law does not recognize a common law cause of action for violating public policy if a statutory remedy exists. *Gillispie v. RegionalCare Hospital Partners Inc.*, 892 F. 3d 585, 597 (3d Cir. 2018); *Spriggs v. City of Harrisburg*, 679 F. Supp. 3d 144, 155 (M.D. Pa. 2023) ("it is well settled that courts will not entertain a separate common law action for

wrongful discharge where specific statutory remedies are available.") (citing *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 918 (1989)). "Indeed, courts have held that the PW[A] has the same preemptive effect on the common law public policy exception as other statutes, and have accordingly barred plaintiffs from pursuing the public policy exception when the PW[A] affords a statutory remedy." *Spriggs*, 679 F. Supp. 3d at 156 (granting a motion to dismiss on grounds that the PWA preempted common law wrongful discharge claim) (citing *Katzenmoyer v. City of Reading, Pa.*, 158 F.Supp. 2d 491, 503–04 (E.D. Pa. 2001) ("Under Pennsylvania law, there is an action for wrongful discharge only where there is no available statutory remedy for the aggrieved employee ... Courts have specifically applied this rule to bar common law claims where a plaintiff had cognizable claims under the Whistleblower Act")); *Freeman v. McKellar*, 795 F.Supp. 733, 742 (E.D. Pa. 1992) (holding that the plaintiff's appropriate statutory remedy under the PWA preempted their wrongful discharge claim and granting defendant's motion to dismiss in part). Further, the preemptive effect of the PWA on a common law claim does not turn on the success of the plaintiff's PWA claim, but rather the existence of the statute. *Spriggs*, 679 F. Supp. 3d at 155-56 ("It is the existence of the remedy, not the success of the statutory claim, which determines preemption.") (citing *Jacques v. AKZO Int'l Salt, Inc.*, 619 A.2d 748, 753 (Pa. Super. Ct. 1993)).

Here, the existence of the PWA bars Ong's common law claim. Accordingly, Defendants' motion to dismiss will be **GRANTED** as to the common law claim in Count IV. (Doc. 11).

D. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment

would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Here, the Court will not grant leave to amend the dismissed common law wrongful termination claim. Ong's wrongful termination claim is preempted by his PWA claim, and amendment would thus be futile. *Valentine v. Bank of Am.*, No. CIV.A. 09-262 (SDW), 2010 WL 421087, at *6 (D.N.J. Feb. 1, 2010) (denying leave to amend due to futility when a plaintiff's common law claim is preempted by a statutory claim based on the same facts).

### IV.   CONCLUSION

For the foregoing reasons, Allstar's motion to dismiss is **DENIED in part** as to Counts II and III and **GRANTED in part** as to Count IV. Count IV of the complaint is **DISMISSED with prejudice**. (Doc. 1). An appropriate Order follows.

Dated: February 13, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**